May it please the Court, Jesse Duarte for Appellant Henry Moon. I'd like to reserve two minutes. Yes. Your Honors, the issue we're here today is over whether the District Court erred in granting because we did present tribal issues of fact concerning the elements of our negligence claim. In particular, the evidence of duty. We raised issues concerning the foreseeability of the third party criminal activity that did occur on the premises. With respect to whether Omni breached that duty, we did introduce sufficient lay evidence, which under Rhode Island law, is sufficient to enable a jury to make a common sense inference as to whether what a reasonably prudent hotel owner or employee would have done under the circumstances. Further, reasonable minds can certainly disagree, or excuse me, be satisfied based on the undisputed facts that the Omni's actions and inactions were the proximate cause of Mr. Moon's injuries. In particular, the facts that are present in the record concern the age of the assailants, the young age of the assailants. And under Rhode Island law, Martin v. Marciano, we see that, excuse me, and coupled with the clear evidence, undisputed evidence, that these attackers were, had a case of beer outside Omni Hotel at past 2.30 in the morning. And we argue that they did not, that they obtained a case of beer after 2.30 in the morning right at the hotel would suggest that this is not the first case of beer that they had that night. The, under Martin v. Marciano, the deleterious effects of intoxicating substances like alcohol and drugs are well known. Moreover, it is common knowledge that alcohol excites the tempers, unduly excites the tempers and emotions of the people who indulge in it. We have evidence, there's evidence in the record, that the security were summoned to a room because of excessive noise, which sounded like teenagers partying and they smelled marijuana. The drug use with the young age of the assailants follows the facts of Marciano, which would give rise to a duty, to a foreseeable risk of violence. Furthermore, we have at least two instances of violence that the valet, Danny LeBron, witnessed right outside the Omni and the district court did determine that his, he is an agent for the purposes of this motion. And as such, the agent was aware, we have evidence, testimony from the plaintiff that this agent was made aware of the fighting, that punches were thrown, there was much shouting. This was tumultuous behavior that the Omni was aware of or should have been aware of and should have done something about before a plaintiff came back into the hotel to alert them himself and was then attacked. Furthermore, the rowdy, as the valet describes it, the rowdy and violent behavior clearly gives rise to a foreseeable risk of further rowdy, tumultuous behavior. And in addition, the Omni was on notice that was sent a spoliation request regarding the security video just the day after this incident. However, they never responded. And they have since claimed that their video is non-existent. While there were six cameras inoperable of the 24 that night, there was certainly, it is conceded that there was some evidence, there was some video evidence that night which was, is now not available and I would, it seems to suggest was destroyed. And if that is the case under Rhode Island law, adverse inferences about the content of that video may be drawn by the jury, the finder of fact, against the defendants. That evidence alone provides enough room for what could have been foreseeable. Those inferences alone create enough to survive, prevent a proper grant of summary judgment in this case. We have over 20, the discrepancy in the numbers of people from the various accounts that were given, at least at first it was over a dozen, as many as 20 people were in this one hotel room. Then in their numbers down to at least four and at least six. And these are further facts that are suggestive of material disputes and suggestive that the Omni was much more concerned about the activities of these individuals on their property initially than they have let on. There's been testimony that the individuals were actually coming out of the hotel just before they engaged in the fighting and that that was observed, the first fight, and that was observed by the plaintiff, Mr. Mou. Do you contend that the valet had an obligation as the agent for Omni to call the police or take steps that would result in calling the police irrespective of whether Mr. Mou asked him to do that? I would contend that, yes, but have you taken that position in the case? Have you argued that to the district court? To my knowledge, that has not been explicitly argued, but I mean, well, we did address that in our opposition to the summary judgment motion where we point out that he ignored Mr. Mou's request to call the police and said it's not my problem. So it sounds like you think the trigger is the request as opposed to his own observations. At least that's the position you took in the district court. That would be, yes, Your Honor, that would be one. Does the record establish how long Mr. Mou lived in these residences? I believe it is a matter of a few years and I believe that is in the record. Does it establish anything about what he would have known about whether the operations manager was on site and nearby? At that time of night, the record doesn't establish whether he would have known that, but he does testify that he went into the... I'm just trying to understand why he didn't take the additional step when the valet said he wasn't going to help if it was so important. Why he didn't just go to the person who was clearly in a position to help immediately? Why he didn't immediately do that? I believe, Your Honor, that the record does establish that there was not a long period of time between talking to the valet about requesting that he seek help and then walking into the Omni to seek that help. So what's the evidence in terms of what the time delay was? It's unclear. It's not precise. But given that the timeline of this entire thing is about 20 minutes from evicting from the room to the attack to Ms. Capple, the night manager calling the police, is a little over 20 minutes. It couldn't have been a significant period of time, I'd argue. Thank you. Can I ask a question? Yes, of course. What is your understanding of the standard of care that's owned by an innkeeper to a client under the law of Rhode Island? Your Honor, the standard of care is to protect against the risk of foreseeable harms to those that you anticipate on your property. Thank you. May it please the court. My name is Jeff. I'm sorry, go ahead. My name is Jeff Milsom and I represent the Omni Hotels Management Company. I can wait. My question is I want to know what your view of the standard of care is in Rhode Island. There's no evidence in the record of the standard of care. I'm asking about the law. What you understand to be the law in Rhode Island is the standard of care is owned by an innkeeper to a client for events that take place in his premises. My understanding of the law is that in Rhode Island it is completely silent on that point. It's silent. I'm not aware of a single case that establishes the standard of care owed by, in this case, a luxury hotel in downtown Providence or any urban setting in Rhode Island to an invitee. Is a resident referred to as an invitee?  This becomes relevant under the special relationship aspect of the duty inquiry. In other words, there's only a duty incumbent upon a hotelier to somebody with whom they have a special relationship and with respect to events that are foreseeable. Where do you get that law? That is Rhode Island law, but that's Rhode Island law as to duty. That doesn't establish the standard of care. The standard of care comes in afterwards. If there is a duty, if there's a duty incumbent upon the hotel, which is the threshold inquiry, then the question becomes, it's obviously a duty of care. What is the care? What is the applicable standard of care? That leads to the breach inquiry. In this case, the threshold inquiry is, was there a duty? The background... How do you answer that question? I'll tell you. The background law is that there is no duty incumbent upon a hotelier, proprietor, an innkeeper, or any landlord to protect invitees or persons on their property from spontaneous criminal assaults, absent a special relationship, which I believe we have in this case. The district court found there was a special relationship. And we do not contest that. Between the victim, in this case Mr. Moo, and the hotel. As an invitee, Mr. Moo enjoyed a special relationship. So that piece of the duty is conceded? Yes. Okay. Yes, we don't contest that. Where I think the rub is, is on the foreseeability inquiry. I have a question about Rhode Island law when it comes to that. I keep reading these cases that suggest that becomes a jury question, which confuses me a little bit, since duty tends to be a legal question. So can you enlighten me? My understanding of the foreseeability inquiry is under Rhode Island law and the law of the circuit. And the foreseeability inquiry that's applicable is best articulated, I think, in the cases we've cited in our brief by a case out of Texas called Jai Jalaram. And it requires the court to assess the state of defendant's knowledge prior to the events in question. And that's crucial, because that's what we're saying. And that's what this court has historically done. There's no Rhode Island law on this point? On how to conduct the foreseeability inquiry, there's no very articulate explanation of it. You can divine how the foreseeability is conducted from any number of decisions. And what we say is you look at the state of defendant's knowledge before the circumstances that gave rise to the incident unfolded. And that's why we look at and have urged this court and the district court to look at the background rate of criminal activity, how many prior incidents there were on the property. I want to read a quote from Volpe. I need my glasses for this. Once the court determines that the defendant owed some duty to the class or category of persons that include the victim, generally the question of foreseeability constitutes an issue of fact that is properly submitted to the jury. I think the court is not being precise in its analysis of the existence of a jury. And it's moving into causation and standard of care. And it's an important distinction for the purposes of this case. Because what plaintiff is arguing is you look at duty at each stage in the factual circumstances as they unfold. And we're saying, no, you establish duty as a threshold situation. What does the defendant know? How are you going to place upon them the burden of protecting invitees if you don't look at the state of criminal activity, prior assaults, et cetera? And that's what this court did, importantly, in the Woods letter versus Hyatt Hotels of Puerto Rico case. That was the rabid mongoose case where a guest laying by the hotel's pool was attacked by a rabid mongoose. And the court, in analyzing whether there was a duty as a threshold inquiry, looked at whether the hotel knew there were mongooses in the mangrove swamp next to the hotel, whether a mongoose had ever been spotted on the hotel property, and whether there had ever been wild animal attacks on guests. Let me ask you a question about suppose the mongoose was frothing at the mouth. Well, that's what the court didn't consider. Right, but that's maybe your case. I think that's what, that's what. That's his contention is that that's your case. Well, because there's a bunch of people. We don't have a history of whether they were beating people up. But I see them beating people up. So I think maybe they're going to beat other people up. Just like I don't know if that mongoose ever attacked anybody, but it's frothing at the mouth, so maybe ought to do something about it. I think that's his argument. That's his argument, exactly. So what's wrong with that argument? How do we know Rhode Island thinks it's wrong? Well, we know this court thinks it's wrong because the court didn't look at that in the Woods letter case. They didn't say, well, what happened once the mongoose was observed by the pool? What happened once the mongoose was observed to be acting erratically or frothing at the mouth? What happened? It doesn't do any change when the mongoose approached. I'm just saying in your case, in the mongoose case, was there evidence that it was frothing in the mouth? The court did not look at that or consider it in establishing. When you say it didn't consider, is that because it said it was frothing in the mouth but I'm not going to consider it? It didn't consider it because. They just did not reference it. I believe. There was no evidence mentioned in the case that it was frothing in the mouth. I believe in what we're arguing. I'm guessing it's the latter, right? I believe that the proper examination of duty requires the court to look at what the defendant knew in the background before the facts of the events unfold. In this case, what we do know is that the defendant knew there was a rowdy group of persons at 2.30 in the morning who were causing some violence. I don't know that. I don't believe that. They were beating people up on the street. They had just left the building having been ejected from a room so they knew there was the same group. The undisputed evidence is that the group was polite, compliant, and If they left, then they proceeded to beat up people in the sidewalk observed by an employee who had been asked to call the police and said it's not my problem. Your Honor, I think, as I've been clear, I think the duty analysis begins and ends before you start considering the events in the sequence. At that point, it's a question of standard of care. So there was this group. I guess I'm not following this just logically. I take the point they leave politely, now they're on the street. They're beating each other up on the street. So you say no duty at that point. I understand that. Same people now walk back onto the premises as they did. Why at that point is there not a duty? The duty, the rule in Rhode Island is that there's no duty to protect people on your property from spontaneous criminal assault. That's not following. This is the nature of their argument, which is if there's a bunch of people who are polite hanging out on the street and they come into the building, if they beat somebody up, you're not responsible for that because how could you know? If there's a bunch of people on the street who are beating each other up and they come onto your property, he says, well, at that point, you might think they might beat some people up on the property, so you should protect people from that. What's wrong with that? The problem is that you're analyzing duty in the context of hindsight. And it goes from the sublime to the ridiculous. At a certain point, the assailant raised a table over his shoulder to strike the plaintiff. Certainly, it was foreseeable at that point. Of course it was, but there's no way you could do anything about it at that point. No, he's not claiming they breached at that point by not jumping in front of the table. He's just saying that at the moment, a group of people who are behaving violently come onto the premises. At that point, there would be a duty of care. What's wrong with that argument? Suppose it's the hell's angels and they're out there beating the hell out of each other right up front and they come onto the property. You say not to do anything? Your Honor, I say at a certain point, at a certain point in the sequence of events, the inquiry becomes the standard of care. What should they have done? And there's no evidence of the applicable standard of care. In Rhode Island, unless it's obvious to a layperson what the appropriate standard of care, in this case, of a luxury hotel in downtown Providence is, it's a matter for expert testimony. So you're conceding duty then? Your Honor, we don't concede duty. We believe the duty inquiry begins and ends prior to the events in question unfolding. And as those events in question, because at a certain point, foreseeability is a foregone conclusion, as I indicated. As the events unfold, the question... So special relationship is a foregone conclusion and foreseeability is a foregone conclusion. What's left to establish in duty? I didn't say... The duty inquiry, we argue, must be conducted before the events unfold. You can't, we believe, analyze duty afresh as each new thing happens. So it applies once the special relationship is established. So the only thing that needs to be proved is that either the victim or the other people whose conduct needs to be controlled have the special relationship. At that point, you look at foreseeability? You don't look at any of the facts? Well, I think you look at what the defendant knew about criminal assaults on the property, in the past, in the vicinity, in order to establish the duty. The duty inquiry begins and ends before the events unfold. Just so I get the idea, just take my example. There's a gang of rowdy people beating each other up in front of the hotel. They never come into the hotel, they're just on the sidewalk. And they're just going at it, big time. They now come onto the property of the hotel. As I understand it, you're saying the hotel has no obligation to call security at that moment. That's right? That's okay. That sounds like what your position is. Our position is there's no duty... Just so I understand, yes or no? In that circumstance, I witness a gang of people beating each other up. They now come into the lobby of the hotel. I have no obligation to call security at the hotel here. Even though I witness them beating each other up outside the hotel. I think... Just yes or no? No. Okay. Thank you, Your Honor. Thank you. All right. Thank you both.